**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**

**MARK LEWIS KING,**

    **Petitioner,**

**v.**                                                                                **Civil Action No. 3:13cv177**
                                                                                  **Criminal Action No. 3:12cr27-1**

**UNITED STATES OF AMERICA,**         **(Judge Bailey)**

    **Respondent.**

## REPORT AND RECOMMENDATION

### I. Introduction

On December 2, 2013, the *pro se* petitioner wrote a letter to the Clerk of Court that was construed as a Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside or Correct Sentence by a Person in Federal Custody[1] and docketed as such on December 9, 2013. Because the petition was not on a court-approved form, the Clerk of Court issued a notice of deficiency, advising petitioner to correct his deficient pleadings within 21 days, or by December 30, 2013. On January 7, 2014, having received no response from petitioner, a Show Cause Order was entered. Petitioner filed his court-approved form petition on January 21, 2014, along with a cover letter, apologizing for his misunderstanding the deficiency notice. By Order entered January 27, 2014, the respondent was directed to answer the petition. On February 10, 2014, the petitioner filed a memorandum in support of his petition. The respondent filed a Motion to Dismiss or in the Alternative, for Summary Judgment and Response to Order to Show Cause on February 21, 2014. Petitioner did not file a reply.

---

[1] Dkt.# 64.

1

This matter is pending before me for review, report and recommendation pursuant to LR PL P 2.

## II. Facts

### A. Conviction and Sentence

On July 19, 2012, petitioner signed a plea agreement by which he agreed to plead guilty to Count Two of a six-count indictment, charging him with distribution of 2.23 grams of a mixture and substance containing a detectable amount of cocaine base, also known as "crack," within 1000 feet of a school, in violation of Title 21, U.S.C. §§841(a)(1) and 860. The petitioner waived his right to appeal and to collaterally attack his sentence. Specifically, the petitioner's plea agreement contained the following language regarding his waiver:

> 10. Defendant is aware that Title 18, United States Code, Section 3742 affords a defendant the right to appeal the sentence imposed. Acknowledging all this, and in exchange for the concessions heretofore made by the United States in this plea agreement, Defendant knowingly and voluntarily waives the right to appeal any sentence which is within the maximum provided in the statute of conviction[1] or in the manner in which that sentence was determined on any ground whatever, including those grounds set forth in Title 18, United States Code, Section 3742. Defendant also waives his right to challenge his sentence or the manner in which it was determined in any collateral attack, including but not limited to, a motion brought under Title 28, United States Code, Section 2255 (habeas corpus). The United States does not waive its right to appeal the sentence; however, in the event that there would be an appeal by the United States, Defendant's waiver contained in this paragraph will be voided provided Defendant complies with the provisions of Rule 4(b)(1)(A)(ii) of the Federal Rules of Appellate Procedure.

(Dkt.# 41, ¶10 at 4).

On August 1, 2012, the petitioner entered his plea in open court. (Dkt.# 78). Petitioner testified that he could read write and understand the English language. (Id. at 3). He reported that he was 34 years old and had obtained a GED and attended "a little bit of college." (Id. at 4).

---

[1] Paragraph 2 of the Plea Agreement specified that the maximum penalty petitioner would be exposed to by virtue of his plea was not less than one year nor more than sixty years' incarceration, and a term of 12 years supervised release. (Dkt.# 41 at 1).

He denied having taken any medicine, drugs or alcohol within the preceding 24 hours. (Id. at 3). He denied having ever received treatment for mental illness[2] but admitted having gone to N.A. (Narcotics Anonymous) in the past. (Id. at 4). He denied having any hearing impairment or other disability that would prevent his full participation in the hearing. (Id. at 5). The Assistant U.S. Attorney read aloud or summarized the entire plea agreement, including paragraph 10, *supra*, in open court. (Id. at 6 – 13). Petitioner did not object to any part of the plea agreement. (Id. at 13). Petitioner testified that he had reviewed the plea agreement in detail with his attorney before signing it. (Id. at 14). The Court specifically asked if petitioner understood the waiver of appellate and post-conviction relief rights and petitioner said that he did. (Id. at 14). The Court the asked defense counsel if he believed that petitioner fully understood the importance of the waiver of his appellate rights and counsel said that he did believe petitioner understood. (Id.). The Court asked petitioner if he had been promised any substantial assistance sentence reduction or anything else that was not contained in the written plea agreement and petitioner said that he had not. (Id. at 14 – 15). The Court then reviewed all the rights petitioner was giving up by pleading guilty. (Id. at 20 - 22). During the plea hearing, the Government presented the testimony of West Virginia State Trooper Scott Dillon of the Eastern Panhandle Drug and Violent Crimes Task Force to establish a factual basis for the plea. (Id. at 22 - 24). Petitioner's counsel declined to cross examine the witness when given the opportunity. (Id. at 24). Petitioner did not object to the witness' characterization of the events. (Id.).

After the Government presented the factual basis of the plea, the petitioner advised the Court that he was guilty of Count 2 of the indictment. (Id. at 25). The petitioner further stated

---

[2] This statement is contradicted by the PreSentence Investigation Report ("PSR") which indicates that in 2009, petitioner was voluntarily admitted to a psychiatric unit for 5 days for suicidal and homicidal thoughts, and received treatment for intermittent explosive disorder, depression, polysubstance abuse and "rule out" bipolar disorder and antisocial personality disorder. See Dkt.# 52, ¶126 - 128 at 29-30.

3

under oath that no one had attempted to force him to plead guilty, and that he was pleading guilty of his own free will. (Id.). In addition, he testified that the plea was not the result of any promises other than those contained in the plea agreement. (Id.). The petitioner testified that his attorney had adequately represented him, that there was nothing his attorney did not do that he thought should have been done, and there was nothing his attorney had done that he thought was done improperly. (Id. at 26). Finally, petitioner said that he was in fact guilty of the crime to which he was pleading guilty. (Id.).

At the conclusion of the hearing, the Court determined that the plea was made freely and voluntarily, that the petitioner understood the consequences of pleading guilty, and that the elements of the crime were established beyond a reasonable doubt. (Id.). The petitioner did not object to the Court's finding.

On December 3, 2012, the petitioner appeared before the Court for sentencing. (Dkt.# 51). After considering several factors, including the circumstances of the crime; petitioner's criminal history; difficult childhood with multiple types of abuse and introduction to polysubstance abuse at age 10 by his own parents; his efforts to educate himself; his personal history and characteristics; and the sentencing objectives of punishment, the Court sentenced the petitioner to a term of 108 months imprisonment, the mandatory minimum,[3] outside of the advisory sentencing guidelines of 120-150 months, to be followed by 12 years of supervised release. (Dkt.# 54).

**B. Appeal**

Petitioner did not pursue a direct appeal.

**C. Federal Habeas Corpus**

---

[3] Dkt.# 54 at 1.

**Petitioner's Contentions**

Petitioner raises four grounds of ineffective assistance of counsel, contending that because of counsel's deficient performance, his plea was not knowing and intelligent. Specifically, he contends that counsel

1) misadvised him to stipulate and agree to a greater amount of cocaine base than was alleged in the indictment;

2) failed to mount the defense that the drugs were for petitioner's personal consumption and therefore there could be no intent to distribute; and

3) failed to investigate, before counseling him to enter a plea to possession with intent to distribute, despite the fact that the offense failed to charge the requisite minimum amount of cocaine base necessary to qualify as a federal crime under the Controlled Substance Act ("CSA").

4) Therefore, because of counsel's ineffectiveness, petitioner was convicted of a non-existent offense, because the required minimum drug quantity proscribed [sic] under the statute represents both an element for intent to distribute and a jurisdictional amount, for the purpose of 21 U.S.C. §§ 841 and 844(a) and petitioner was charged with a lesser amount in Count Two.

As relief, petitioner seeks to have his conviction and sentence vacated.

**Government's Motion to Dismiss or in the Alternative, for Summary Judgment and Response**

The Government contends that the petition should be dismissed or that summary judgment be granted in its favor, because petitioner has failed to state a claim upon which relief can be granted, because:

1) counsel was not ineffective in reaching a stipulation as to total drug relevant conduct; and

2) Grounds Two, Three and Four cannot support a claim of ineffective assistance, because petitioner did not plead guilty to a possession with intent to distribute charge, only to a count of distribution.

### III. Standard of Review

A. **Petitioner's Burden of Proof**

"A petitioner collaterally attacking his sentence or conviction bears the burden of proving his sentence or conviction was imposed in violation of the Constitution or laws of the United States; that the court was without jurisdiction to impose such a sentence, that the sentence exceeded the maximum authorized by law, or that the sentence otherwise is subject to collateral attack. 28 U.S.C. §2255. A motion collaterally attacking a petitioner's sentence brought pursuant to § 2255 requires the petitioner to establish his grounds by a preponderance of the evidence. Jacobs v. United States, 350 F.2d 571, 574 (4th Cir. 1965); Sutton v. United States of America, 2006 WL 36859 *2 (E.D. Va. Jan. 4, 2006); Hall v. United States, 30 F.Supp.2d 883, 889 (E.D. Va. 1998).

The Court may decide a §2255 Motion without an evidentiary hearing if "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255; see United States v. Yearwood, 863 F.2d 6, 7 (4th Cir. 1988); Zhan Gao v. United States, 375 F.Supp.2d 456, 459 n.1 (E.D. Va. 2005).

## IV. Analysis

A. **Applicable Law**

1) **Law Governing Waivers of Direct Appeal and Collateral Attack Rights**

"[T]he guilty plea and the often concomitant plea bargain are important components of this country's criminal justice system. Properly administered, they can benefit all concerned." Blackledge v. Allison, 431 U.S. 63, 71 (1977). However, the advantages of plea bargains are only secure when "dispositions by guilty plea are accorded a great measure of finality." Id. The Fourth Circuit has recognized that the Government often secures waivers of both appellate and

collateral attack rights "from criminal defendants as part of their plea agreement." United States v. Lemaster, 403 F.3d 216, 220 (4th Cir. 2005).

Courts have routinely held that "defendants can waive fundamental constitutional rights such as the right to counsel, or the right to a jury trial." United States v. Marin, 961 F.2d 493 496 (4th Cir. 1992). Specifically, the Fourth Circuit has held that "a waiver-of-appeal-rights provision in a valid plea agreement is enforceable against the defendant so long as it is 'the result of a knowing and intelligent decision to forgo the right to appeal.'" United States v. Attar, 38 F.3d 727, 731 (4th Cir. 1994)(citations omitted). However, a defendant still retains the right to appellate review on limited grounds, such as when a sentence above the maximum penalty provided by statute is imposed or when a sentence is imposed based on a constitutionally impermissible factor. Id. at 732. Furthermore, the Attar court recognized that a defendant cannot "fairly be said to have waived his right to appeal his sentence" on the ground that he was wholly deprived of counsel during sentencing procedures. Id.

Eleven years later, the Fourth Circuit determined that there was no reason to distinguish between waivers of appellate rights and waivers of collateral attack rights. Lemaster, 403 F.3d at 220 n.2. The Fourth Circuit noted that all courts of appeals that have considered the issue have "held that the right to attack a sentence collaterally may be waived so long as the waiver is knowing and voluntary." Id. at 220. The Lemaster court did not address whether the same exceptions that were noted by the Attar court apply to a waiver of collateral attack rights, but it did note that it saw "no reason to distinguish" between the two. Id. at 220 n.2; see also United States v. Cannady, 283 F.3d 641, 645 n.3 (4th Cir. 2000)(collecting cases where the court has determined that waivers of §2255 rights are generally valid).

The Fourth Circuit has not yet issued a binding decision defining the scope of collateral attack waivers and so has not yet imposed on this court a standard governing "the extent to which an ineffective assistance of counsel claim can be precluded by a §2255 waiver." Braxton v. United States, 358 F.Supp.2d. 497, 502 (W.D. Va. 2005).[4] However, several courts have held that collateral attack waivers should be subjected to the same conditions and exceptions applied to waivers of direct appellate rights. Cannady, 283 F.3d at 645 n.3 (collecting cases). Moreover, most courts of appeals have determined that waivers of collateral attack rights encompass claims "that do not call into question the validity of the plea or the §2255 waiver itself, or do not relate directly to the plea agreement or the waiver." Braxton, 358 F.Supp. 2d at 503.

The Fourth Circuit has held that the determination of whether a waiver of appellate and collateral attack rights is "knowing and intelligent" depends "upon the particular facts and circumstances surrounding [its making], including the background, experience, and conduct of the accused." Attar, *supra* at 731 (quoting United States v. Davis, 954 F.2d 182, 186 (4th Cir. 1992)). This determination is often made upon reviewing the "adequacy of the plea colloquy" and determining, in particular, "whether the district court questioned the defendant about the appeal waiver." United States v. Blick, 408 F.3d 162, 169 (4th Cir. 2005). However, an ultimate decision is "evaluated by reference to the totality of the circumstances." United States v. General, 278 F.3d 389, 400 (4th Cir. 2002).

**2) Law Governing Guilty Pleas**

A guilty plea diminishes the scope of potential claims available under 2255. "When a defendant pleads guilty, he waives all nonjurisdictional defects in the proceedings conducted prior to entry of the plea." United States v. Bundy, 392 F.3d 641, 644 (4th Cir. 2004). The "guilty

---

[4] The Fourth Circuit issued an unpublished *per curiam* opinion affirming the Western District of Virginia's ruling in Braxton. See United States v. Braxton, 214 F. App'x. 271 (4th Cir. 2007).

plea represents a break in the chain of events which has preceded it in the criminal process." Tollett v. Henderson, 411 U.S. 258 (1973). Thus, the defendant who has pled guilty "has no non-jurisdictional ground upon which to attack that judgment except the inadequacy of the plea," Bundy, 392 F.3d at 644-45, or the government's "power to bring any indictment at all," United States v. Broce, 488 U.S. 563, 575 (1989); see United States v. Bluso, 519 F.2d 473, *4 (4th Cir. 1975) ("A guilty plea is normally understood as a lid on the box, whatever is in it, not a platform from which to explore further possibilities."); see also Blackledge v. Perry, 417 U.S. 21, 29-30 (1974) ("[W]hen a criminal defendant enters a guilty plea, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea. Rather, a person complaining of such antecedent constitutional violations is limited . . . to attacks on the voluntary and intelligent nature of the guilty plea, through proof that the advice received from counsel was not within the range of competence demanded of attorneys in criminal cases." (internal quotation marks and citations omitted)).

## B. **Petitioner's Ineffective Assistance of Counsel Claims**

In Strickland v. Washington, 466 U.S. 668 (1984), the Supreme Court of the United States established a two-part test for determining whether a convicted person is entitled to relief on the ground that his counsel rendered ineffective assistance. The first prong of the test requires that the petitioner demonstrate that counsel's performance was deficient and "fell below an objective standard of reasonableness." Strickland at 688. The second prong requires the petitioner to show that the deficient performance prejudiced the defense. Id. at 687. These two prongs are commonly referred to as the "performance" and "prejudice" prongs. Fields v. Att'y Gen'l. of Md., 956 F.2d 1290, 1297 (4th Cir. 1992).

9

In order to satisfy the prejudice requirement of the two-prong test set forth in Strickland, defendant must show that "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Lockhart v. Fretwell, 506 U.S. 364 (1993). Therefore, if counsel's errors have no effect on the judgment, the conviction should not be reversed. Strickland, *supra* at 691.

In addition, "a defendant who alleges ineffective assistance of counsel following the entry of a guilty plea has an even higher burden to meet." Hill v. Lockhart, 474 U.S. 52, 53-59 (1985). In the case of a guilty plea, the defendant must show that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Id. at 59 (footnote omitted); Hooper v. Garraghty, 845 F.2d 471, 475 (4th Cir. 1988). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland 466 U.S. at 694. The Fourth Circuit has recognized that if a defendant "cannot demonstrate the requisite prejudice, a reviewing court need not consider the performance prong." Fields, supra at 1297.

It is further noted that a Court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonably professional assistance. Strickland 466 U.S. at 689-90. Moreover, there are no absolute rules in determining what constitutes reasonable performance. See Hunt v. Nuth, 57 F.3d 1327, 1332 (4th Cir. 1995) (counsel's representation is viewed on the facts of a particular case and at the time of counsel's conduct).

**Ground One: Whether Counsel Was Ineffective for Advising Petitioner to Stipulate to Total Drug Relevant Conduct that Exceeded the Amount Alleged in the Indictment and the Validity of Petitioner's Guilty Plea**

Petitioner contends that counsel was deficient when he "misadvised" him and encouraged him to agree to 144 grams of cocaine base as part of his drug relevant conduct factual stipulation in the plea agreement, advice that was "woefully unreasonable" considering that Count Two, by itself, only charged him with 2.23 grams, and the drugs charged in all the counts together only totaled "a mere 4.49 grams (cocaine base)." (Dkt.# 75 at 8).

Here, in the guise of a claim of ineffective assistance, petitioner appears to actually be asserting that his plea was not knowing and voluntary because counsel did not explain that his sentence could be enhanced based on conduct outside the count to which he planned to, and ultimately did, plead. This is an attack squarely against his sentence, which is proscribed by the waiver of collateral attack rights in the plea agreement.

The Fourth Circuit has indicated that when the district court conducts a thorough Rule 11 colloquy and the defendant specifically mentions he waives the right to appeal any sentence below the statutory maximum, the record establishes that defendant made a knowing and voluntary waiver of rights. United States v. Morris, 247 Fed. Appx. 459, 460 - 61 (4th Cir. Sept. 13, 2007). Similarly here, the district court conducted a Rule 11 colloquy and the petitioner acknowledged that he waived his right to appeal any sentence that was within the maximum provided by the statute of conviction, a maximum penalty of not more than sixty years. (Dkt.# 78 at 6 - 7). Thus, petitioner waived his right to collaterally attack his sentence if it was within the maximum provided by the statute of conviction, or not more than sixty years. (Id.). His sentence was 108 months imprisonment, or nine years. The only reasonable conclusion is petitioner waived the right to collaterally attack his sentence. Therefore, pursuant to the waiver of post-conviction relief rights in his plea agreement, petitioner validly waived the right to bring

any ineffective assistance of counsel claims occurring prior to the entry of his guilty plea. However, because the pleadings of *pro se* petitioners are to be afforded liberal construction,[5] and this claim could easily be construed as one that calls "into question the validity of the plea itself,"[6] it, along with an examination of petitioner's guilty plea, will be given review.

A guilty plea must be a voluntary and intelligent decision of the defendant. Boykin v. Alabama, 395 U.S. 238, 242 (1969); North Carolina v. Alford, 400 U.S. 25, 31 (1970). If the defendant does not understand his constitutional protections and the charges made against him, the guilty plea is invalid. Henderson v. Morgan, 426 U.S. 637, 645 (1976). "[A] valid plea of guilty requires that the defendant be made aware of all 'the direct consequences of his plea.'" Cuthrell v. Director, Patuxent Inst., 475 F.2d 1364, 1365 (4th Cir.), cert. denied, 414 U.S. 1005 (1973) (quoting Wade v. Coiner, 468 F.2d 1059, 1060 (4th Cir.1972)), including the length of the maximum sentence or any mandatory minimum sentence which may be imposed. Manley v. United States, 588 F.2d 79, 81 (4th Cir.1978).

A defendant's statement that his plea is voluntary and knowing is generally considered conclusive on these issues. Savino v. Murray, 82 F.3d 593, 603 (4th Cir. 1996). "Absent clear and convincing evidence to the contrary, a defendant is bound by the representations he makes under oath during a plea colloquy." Fields v. Attorney Gen. of Maryland, 956 F.2d 1290, 1299 (4th Cir. 1992), cert. denied, 506 U.S. 885 (1992). A defendant's statements at the plea hearing are "strong evidence" of the voluntariness of the plea agreement. United States v. DeFusco, 949 F.2d 114, 119 (4th Cir. 1991), cert. denied, 503 U.S. 997 (1992). Moreover, "findings by a sentencing court in accepting a plea 'constitute a formidable barrier' to attacking the plea. United

---

[5] Haines v. Kerner, 404 U.S. 519, 520 (1972).

[6] Braxton, *supra* at 503.

States v. Lambey, 949 F. 2d 133, 137 (4th Cir. 1991) (quoting Blackledge v. Allison, 431 U.S. 63, 73-74 (1977)).

Here, petitioner's contention that counsel's ineffectiveness rendered his plea unknowing and unintelligent is clearly refuted by the record. As a preliminary matter, the indicted drug weight in all counts of the indictment together was 10.11 grams, not "a mere 4.49 grams," as petitioner suggests. Also considered for the total drug relevant conduct stipulation was the historical information obtained from five confidential sources, on prior drug amounts purchased from petitioner, which ranged from a low-end estimate of 134.05 grams of cocaine base to a high-end estimate of 201.60 grams of cocaine base. The low-end estimate was added to the indicted weight and then rounded to 144 grams of cocaine base.

Petitioner signed each and every page of his plea agreement, including the pages that included paragraph 9, containing the stipulation to the amount of drug relevant conduct, in order to obtain the plea agreement's reciprocal benefits:

> 9. Pursuant to Sections 6B1.4, 1B1.3 and 2D1.1 [Application Note 12] of the Guidelines, the parties stipulate and agree that the total drug relevant conduct of Defendant with regard to the Indictment is **144 grams of a mixture and substance containing a detectable amount of cocaine base, also known as "crack."** Defendant further stipulates he has ~~two~~ one prior drug felony conviction~~s~~, to-wit: On March 9, 1999, defendant was convicted in Southampton County, Virginia, Circuit Court of possession of marijuana by an inmate, a felony, for which he was sentenced to a term of imprisonment of 5 years, 4 years of which were suspended. Defendant understands that pursuant to Section 6B1.4(d), the Court is **not** bound by the above stipulations and is not required to accept same. Defendant understands and agrees that should the Court not accept the above stipulations, Defendant will **not** have the right to withdraw his plea.

(Dkt.# 41 at 3 - 4)(emphasis in the original).

Next, during the change of plea hearing, the paragraph setting forth this 144 gram stipulation was summarized aloud in open court without any objection by petitioner. (Dkt.# 78 at

10). Subsequently, petitioner specifically testified under oath that he had reviewed the plea agreement in detail with counsel before signing it. (Id. at 14).

Even assuming counsel had not already explained the drug relevant conduct stipulation to petitioner, the Court explained the concept to him, as well as the government's burden of proof with regard to this issue. Further, when specifically questioned by the Court whether he understood that under the terms of the plea agreement, he and the Government had stipulated and agreed to 144 grams of crack cocaine as his total relevant conduct, petitioner replied "Yes, sir." (Id. at 18 – 19).

Petitioner testified that he could read write and understand the English language (Id. at 3); had obtained a GED and attended "a little bit of college" (Id. at 4); denied having taken any medicine, drugs or alcohol within the previous 24 hours (Id. at 3); and denied having any hearing impairment or other disability that would prevent his full participation in the hearing. (Id. at 5). The Court reviewed all the rights petitioner was foregoing by the entry of his plea. (Id. at 20 - 22). Petitioner stated under oath that he understood the nature of the charges against him, the possible sentences, and the consequences of his plea. He confirmed that he was not forced, coerced or threatened to take the plea, and that his plea was freely and knowingly given. (Id. at 25). He testified that he was satisfied with his attorney's representation, and that he did not feel that his attorney neglected to do anything he should have done, or did anything improper during his representation. (Id. at 26). At the conclusion of the hearing, Magistrate Judge Joel found that petitioner's plea was made freely and voluntarily, that petitioner was competent to make a guilty plea, and that he had full knowledge and understanding of the consequences of the plea, and that there was a basis in fact for the plea. (Id. at 26). Petitioner acknowledged that he understood that

before his plea was finally accepted at sentencing, both he and the government would have an opportunity to challenge the reported facts and the application of the Guidelines recommended by the probation officer in the PSR. (Id. at 18).

Finally, as promised in the Rule 11 hearing, the detailed information compiling how the final total drug relevant conduct figure was arrived at was carefully summarized in petitioner's PSR.[7] Petitioner had the opportunity to review, discuss with his attorney, and make objections to the PSR before sentencing. However, petitioner made no objections to any part of the PSR.[8]

Although the petitioner now claims counsel failed to adequately represent him, "[a]bsent clear and convincing evidence to the contrary, [he] is bound by the representations he ma[de] under oath during [his] plea colloquy." Fields, *supra* at 1299. Accordingly, the undersigned finds that petitioner knowingly and intelligently entered a plea of guilty and knowingly and intelligently waived his right to collaterally attack his sentence as part of his plea agreement. Further, the undersigned further finds that petitioner has neither proven ineffectiveness[9] nor prejudice, thus he has failed to carry his burden under Strickland.

**Grounds Two, Three and Four: Whether Counsel Failed to Mount the Defense that the Drugs were for Petitioner's Personal Consumption and Therefore there Could be No Intent to Distribute; Whether Counsel Failed to Investigate Before Advising Petitioner to Enter a Plea to Possession with Intent to Distribute; and Whether, as a Result of his Plea, Petitioner was Convicted of a Non-Existent Offense, Because the Required Minimum Drug Quantity Proscribed [sic] Under the Statute Represents both an Element for Intent to Distribute and a Jurisdictional Amount, for the Purpose of 21 USC §§ 841 and 844(a) and Petitioner was Charged with a Lesser Amount in Count Two.**

---

[7] Dkt.# 52, ¶18 – 24 at 5 – 8.

[8] Dkt.# 52 at 42.

[9] To the contrary, despite petitioner's long criminal history and the facts of his involvement in the underlying crime, at the sentencing hearing, at least partly in response to defense counsel's motion for a sentence outside of the advisory guideline, to which the government objected, the Court actually departed from the guidelines by giving petitioner the lowest possible sentence possible: the mandatory minimum of 108 months. (Dkt.# 54 at 3).

Even if these claims were not already barred by petitioner's waiver of collateral attack rights, because they assert ineffective assistance of counsel for conduct occurring before the entry of petitioner's plea,[10] they would still fail. In each of these three grounds for relief, petitioner contends counsel was deficient regarding conduct leading up to the entry of his guilty plea to the charge of possession with intent to distribute. However, petitioner did not plead guilty to possession with intent to distribute, the charge in Count Six. He pled guilty only to Count Two, one of the five claims of distribution, in this particular count, distribution of 2.23 grams of a mixture and substance containing a detectable amount of cocaine base, also known as "crack," within 1000 feet of a school, in violation of Title 21, U.S.C. §§841(a)(1) and 860. Accordingly, not only do these claims fall within the scope of petitioner's collateral attack waiver, they are without support in the record and must be dismissed.

## V. Recommendation

For the foregoing reasons, the undersigned recommends that the government's Motion to Dismiss or in the Alternative, for Summary Judgment (Dkt.# 79) be **GRANTED** and that petitioner's §2255 motion be **DENIED and dismissed with prejudice** from the docket.

**Within fourteen (14) days** after being served with a copy of this report and recommendation, **or by October 8, 2014,** any party may file with the Clerk of Court written objections identifying those portions of the recommendation to which objection is made and the basis for such objections. A copy of any objections shall also be submitted to the United States District Judge**. Failure to timely file objections to this recommendation will result in waiver of the right to appeal from a judgment of this Court based upon such recommendation.** 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th

---

[10] See Lemaster, 403 F.3d at 220 and n.2; Cannady, 283 F.3d at 645 n.3; Attar, 38 F.3d at 731, 732; and Braxton, 358 F.Supp. 2d at 503.

Cir. 1985): <u>United States v. Schronce</u>, 727 F.2d 91 (4th Cir. 1984), <u>cert. denied</u>, 467 U.S. 1208 (1984).

The Clerk is directed to mail a copy of this Report and Recommendation to the *pro se* petitioner by certified mail, return receipt requested, to his last known address as shown on the docket, and to transmit a copy to all counsel of record electronically.

DATED: September 24, 2014

                                             /s/ James E. Seibert_____
                                             JAMES E. SEIBERT
                                             UNITED STATES MAGISTRATE JUDGE